2006-NMCA-001

126 P.3d 546

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Justin PHILLIPS, Defendant–Appellant.**

**No. 25,147.**

Court of Appeals of New Mexico.

Oct. 19, 2005.

Certiorari Granted, No. 29,529, Jan. 5, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Timothy L. Rose, Gary C. Mitchell, P.C., Ruidoso, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} This case presents questions of the admissibility and sufficiency of evidence presented at a probation revocation hearing. The State's only witness at the hearing was a probation officer who relied solely upon statements made in unauthenticated documents in her file. This probation officer read into the record an annotation from another probation officer and some documents submitted to her from Arizona. The Arizona documents were likely from that state's probation department, to which Defendant's probation had been transferred. The district court concluded that these documents were relevant and kept in the ordinary course of business. The district court did not admit the documents into evidence. From this evidence, the district court found that Defendant had violated his probation and proceeded to sentence him. Defendant appeals.

{2} We hold that Defendant's right to confront the witnesses against him was violated when the district court allowed a probation officer to read documents prepared and given to her by other persons without any showing or finding of good cause for not calling those people as witnesses. We further hold that there was insufficient evidence presented to sustain a finding that Defendant had violated the conditions of his probation. We reverse the district court.

## BACKGROUND

{3} Defendant was indicted and ultimately pleaded no contest to various drug offenses and contributing to the delinquency of a minor. The district court suspended Defendant's sentence and placed Defendant on probation. Among other conditions, Defendant was ordered to complete two years in an inpatient treatment program. On November 20, 2002, Defendant was accepted into and completed one six-month New Mexico treatment program. Defendant's probation was then transferred to Arizona, where he entered another treatment program on July 1, 2003. The State filed a petition to revoke Defendant's probation on March 4, 2004. It alleged that Defendant had violated his probation by leaving his treatment center without permission, by violating Arizona's probation requirements, and by "fail[ing] to enroll [in] and successfully complete a long term treatment program."

{4} At the probation revocation hearing, the only witness was Officer Wadley of the New Mexico Adult Probation and Parole Office. Wadley had never met or supervised Defendant, and was only familiar with him from previous court appearances. Wadley asserted that Defendant had failed to comply with the conditions of his probation in Arizona, and that she had received documentation to this effect. Over objection, Wadley testified to the substantive contents of her file, including reading aloud the notations of another New Mexico probation officer. She repeatedly testified to what her file was "showing."

{5} The district court initially found the testimony relevant. When Wadley continued to read from her file, Defendant again objected, stating, "I don't know what she's really reading from, just because they're in a folder that she possesses." The district court allowed the testimony to continue in this vein, subject to "lay[ing] a foundation as to what she's reading from."

{6} Wadley continued to read from a document titled "Discharge Summary." She stated that the document had been sent to her along with "the interstate compact supervision notice of preliminary probable cause hearing that was submitted by the Pima County office in Arizona." The State asked whether "this also was another document kept in the ordinary course of supervising a probationee," and Wadley agreed that it was. The district court allowed her to read from this document as well after Wadley agreed that it was kept in the ordinary course of her business.

{7} Wadley testified that the discharge summary said that Defendant was discharged for non-compliance. She testified that Arizona had found that Defendant had violated his probation. She continued, "I'm showing a signed document by ... [D]efendant. I'm showing a signature of February 10, 2003[,] that's titled, Notice of Preliminary Probable Cause Hearing."

{8} In closing, Defendant again argued that Wadley's testimony was hearsay and lacked a valid foundation under the business records exception. The district court asserted that Wadley had testified that she was the custodian of records, that the records were "kept in the ordinary course of business," and asked what else was necessary. Defendant asserted that there had been no testimony as to who had prepared the documents, but the district court disagreed because "[s]he gave the name of the individual that signed it." Defendant stated that the evidence had not been verified and that there were confrontation concerns. The district court replied that to require the out-of-state witnesses to personally come into court would be too burdensome and "open the flood gates." The court stated:

I don't think the confrontation clause requires that. Under these circumstances where we've got testimony as to the fact an individual that was named by the officer here, signed a document, sent it to her, it's a business record that's kept in the ordinary course of business. I think that they complied, I mean, have testimony as to all of that.

So, I don't think it's hearsay, number one. But, I don't think it's in violation of the confrontation clause, because we have an individual here that is the records custodian as required by her job description to keep all of those records[.]

Defendant and the district court discussed the issue at length before the district court again stated that it would not "open that gate." Defendant then pointed out that the district court had never actually introduced the records. The district court agreed, but stated: "I can accept her reference [to] them ... and what her understanding of what those records are, I mean, I can mix up that as evidence and I didn't hear anything rebutted about that." The district court then concluded that it was a verified fact that Defendant did not get his travel permit until mid-July, that he was already in custody for non-compliance by the following February, and that, as a result, he had been in his program for less than the requisite six months. It found that Defendant had violated his probation by failing to complete the Arizona program. Defendant appeals.

## DISCUSSION

### The Arguments

{9} Defendant argues that Wadley's testimony was inadmissible, violated his confrontation and due process rights, and was insufficient to form the basis for finding that he had violated his probation. The State argues that Wadley's testimony was admissible under the business records exception. It further claims that the district court found a violation of Defendant's probation based on verified facts. It further states that Defendant both admitted to the violation and waived his right to confront the witnesses against him.

### Standard of Review

**{10}** The district court's revocation of Defendant's probation is reviewed for an abuse of discretion. *See State v. Martinez,* 108 N.M. 604, 606, 775 P.2d 1321, 1323 (Ct. App.1989). To establish an abuse of discretion, it must appear that the district court acted unfairly, arbitrarily, or in manifest error. *Id.* The district court abuses its discretion when its ruling is based on a misunderstanding of the law. *State v. Elinski,* 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209.

### The Confrontation Clause and Admissibility of Evidence

**{11}** Probation revocation proceedings are by nature informal. *See* NMSA 1978, § 31–21–15(B) (1989); *State v. Murray,* 81 N.M. 445, 447, 468 P.2d 416, 418 (Ct.App. 1970); *see also Morrissey v. Brewer,* 408 U.S. 471, 487, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error."). The formal rules of evidence thus do not apply to probation revocation hearings. *See* Rule 11–1101(D)(2) NMRA; *State v. Vigil,* 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct.App.1982). So the question before us is not so much whether the testimony fell under the business records exception, Rule 11–803(F) NMRA, but whether, in this informal environment, Defendant was afforded minimum due process. *See State v. Sanchez,* 109 N.M. 718, 719, 790 P.2d 515, 516 (Ct.App.1990) (stating that because probation revocation hearings are not criminal prosecutions or trials, "the full rights owed a criminal defendant in a criminal prosecution do not apply in probation revocation proceedings, and only minimum due process requirements must be met").

**{12}** Even at a probation revocation hearing, defendants have "a right to confront and cross-examine an adverse witness unless the trial court specifically finds good cause for not allowing confrontation." *Vigil,* 97 N.M. at 751, 643 P.2d at 620 (internal quotation marks omitted). Here, Wadley testified that an "Officer Riggs" had made certain notations within Wadley's file. Wad-

ley then testified as to the contents of those notations. The district court allowed this testimony after the prosecutor asserted that the rules of evidence do not strictly apply at probation revocation hearings, and that the notations were made in the file by Riggs "[a]t the time that they occurred." These arguments do not establish any cause for not calling Riggs. *See State v. Cochran,* 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct.App. 1991) ("Argument of counsel is not evidence."). There was no evidence and no finding that the State attempted, but was unable, to obtain the testimony of Riggs. "There being neither showing nor finding of cause for not allowing confrontation, defendant's due process rights of confrontation and cross-examination were violated[.]" *Vigil,* 97 N.M. at 751, 643 P.2d at 620. We therefore reverse the district court's allowing Wadley to read the notes of Riggs as a violation of Defendant's minimum due process rights under *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (stating that the *Morrissey* requirements are applicable to probation revocation proceedings).

**{13}** The district court also allowed Wadley to read from certain documents and, according to Wadley, "from what Myrna has written in her statement." Other portions of the record indicate that "Myrna" apparently refers to the first name of Myrna Garcia. There was no other testimony at the probation revocation hearing about who "Myrna" was, her relationship to the case, why she submitted documents to Wadley, or how Wadley received those documents. *See State v. DeBorde,* 1996–NMCA–042, ¶ 9, 121 N.M. 601, 915 P.2d 906 (stating that the termination of probation "calls for a reasonably orderly process"). For example, there was no indication that the State attempted to, but could not, obtain the testimony of "Myrna." *See Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756. There was no reason on the record for the district court to accept the documents from "Myrna" as true.

**{14}** We have previously expressed our concern over the "mere submission" of documents to support a finding of a violation

of probation. *See State v. Sanchez*, 2001–NMCA–060, ¶ 17, 130 N.M. 602, 28 P.3d 1143 (hereinafter *Sanchez* ). Where, as here, documents from sources only identified by a first name are read by a witness whose primary purpose is as a vessel for the testimony of another, Defendant's right to confront the witnesses against him is violated. A defendant is unable to contradict or otherwise dispute the testimony of those who, with little identification and no explanation, are not called to testify. *See Gagnon*, 411 U.S. at 785, 93 S.Ct. 1756 ("Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion[.]"). As in *Vigil*,

> Defendant has a right to confront and cross-examine an adverse witness unless the trial court "specifically finds good cause for not allowing confrontation". There was no effort by the trial prosecutor to provide a factual predicate for this "good cause" exception to confrontation. There was no specific finding by the trial court that there was good cause for not allowing confrontation.

97 N.M. at 751, 643 P.2d at 620. Here, no specific finding of good cause was made or any factual basis asserted for the absence of "Myrna," although this person was the real witness against Defendant. The district court therefore abused its discretion in allowing Wadley to simply read from her file. The issues revolving around the actual probity of this evidence and its sufficiency are discussed in the next section of this opinion.

■ {15} The district court also posited that when the "record keeper" was available, it was unnecessary under the Confrontation Clause to call the people who had written and prepared the documents. There was no evidence presented in the hearing as to how Wadley obtained the "records" from which she was allowed to read. However, we do not address whether Wadley's testimony was permissible under the business records exception, Rule 11–803(F), because the presence of one characterized as a "record keeper," without more, is insufficient to establish good cause for not calling the witness who submitted the record. *See Vigil*, 97 N.M. at 751, 643 P.2d at 620.

■ {16} Finally, although the district court said that the potential cost to the State in procuring witnesses was "tremendous," merely theoretical difficulties in obtaining a witness's testimony are not a factual basis establishing good cause for failing to call that witness. *See id.* *Gagnon* noted the argument that "the *Morrissey* hearing requirements impose serious practical problems in cases such as the present one in which a probationer or parolee is allowed to leave the convicting State for supervision in another State." 411 U.S. at 782 n. 5, 93 S.Ct. 1756. The *Gagnon* Court then expressed its confidence that the States could modify their interstate compacts in order to comply with constitutional requirements at probation revocation hearings. *Id.* at 782–83 n. 5, 93 S.Ct. 1756.

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. [The State's] greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

*Id.* at 783 n. 5, 93 S.Ct. 1756. Here, no "conventional substitutes" or "creative solutions" were utilized. We therefore reverse the district court's allowing Wadley to read the documents from "Myrna" as evidence that Defendant had violated his probation in Arizona. We hold that Defendant's due process rights were violated. Where, as here, the real witness against Defendant is allowed to testify via another without identification, verification, confrontation, i.e., with a complete lack of demonstration or even discussion of good cause for not calling the real witness, Defendant's due process rights have

been stripped from him. A lack of formality should not excuse a lack of due process. We therefore reverse.

### Sufficiency of Evidence

{17} The burden is on the State to establish that a violation of probation occurred with a "reasonable certainty." *See Sanchez*, 2001–NMCA–060, ¶ 13, 130 N.M. 602, 28 P.3d 1143. While the rules of evidence do not apply to probation revocation hearings, the district court's finding must be "based on verified facts." *Vigil*, 97 N.M. at 751, 643 P.2d at 620 (internal quotation marks and citation omitted). While some hearsay is permissible in a probation revocation hearing, when that hearsay is "untested for accuracy or reliability, [it] lacks probative value; the result is that the revocation of probation does not rest on a verified fact." *Id.* at 753, 643 P.2d at 622.

{18} The district court found that Defendant violated his probation because of the "verified facts" that Defendant "didn't get a travel permit until sometime in mid-July, and he was already in custody for not completing the program in February, which is less than six months is what he's required to be there for [sic]." The district court then revoked Defendant's probation for his failure to complete the treatment program in Arizona. However, Wadley stated that she did not know how long the Arizona treatment program was supposed to last. She stated that she assumed Defendant had started the Arizona program after July 14, 2003, when his travel permit was issued. Even the Discharge Summary that Wadley read from states that Defendant was discharged on February 5, 2004. There was therefore no evidence that Defendant was in the Arizona program for less than six months.

{19} Finally, there were no other "verified facts" showing that Defendant did not comply with the Arizona program other than the fact that he was before the district court in New Mexico, and hence, no longer in Arizona. Wadley merely testified that she "received documentation" from the "Pima County office in Arizona" that Defendant had not complied with the conditions of his probation in Arizona. She stated three times that,

based on her file, Defendant did not successfully complete the Arizona treatment program. This is not sufficient evidence.

{20} Only the Discharge Summary in Wadley's file might support a finding that Defendant had violated his probation. The Discharge Summary states that "Justine [sic] left the [Arizona treatment program] campus without permission and has been non-compliant to treatment thus far and is being discharged for such." It stated that "Myrna Garcia, CAC" was "Primary Counselor" and had a signature at the bottom.

{21} First, Defendant's name is not "Justine." Second, this document is not a sworn affidavit, a self-authenticated public document, *see* Rule 11–902 NMRA, or in any way tested for reliability or accuracy. *See Vigil*, 97 N.M. at 752–53, 643 P.2d at 621–22. "An item does not have the effect of proof, that is, it is lacking in rational persuasive power, absent some basis for accepting the item as reliable." *Id.* at 753, 643 P.2d at 622. The document is not on letterhead and there is not any indication of how Wadley obtained it other than that it was "submitted" to her. *See Sanchez*, 2001–NMCA–060, ¶ 17, 130 N.M. 602, 28 P.3d 1143 (expressing concern over the "mere submission" of documents being the basis for finding a violation of probation). Wadley, in turn, merely read from this document. There is little functional difference between the triple hearsay testimony in *State v. Romero*, 67 N.M. 82, 86, 352 P.2d 781, 784 (1960) (noting that the witness testified as to what "somebody told" the witness's husband), the hearsay in *Vigil*, 97 N.M. at 751, 643 P.2d at 620 (describing the officer's testimony as to what an unidentified confidential informer had told him), and this case, where a probation officer reads what "Myrna" or "the Pima County office in Arizona" has written and submitted to her. Therefore, the finding that Defendant had violated his probation was not "based on verified facts." *See id.* (internal quotation marks and citation omitted).

{22} Finally, the State asserts that Defendant admitted to violating his probation both in the notice and in the hearing. We are unpersuaded. In this case, Defendant's hearing was based on his denial of any

violation of probation. The notice purports to be from the Adult Probation Department in Pima County, Arizona. It has Defendant's name on it and several signatures. No evidence was presented that any of those signatures was Defendant's, or if so, the circumstances under which it may have been signed. *See id.* at 753, 643 P.2d at 622 (requiring that facts be tested for reliability in order to have probative value). The "mere submission" of documents is insufficient to establish a violation of probation. *Sanchez,* 2001–NMCA–060, ¶ 17, 130 N.M. 602, 28 P.3d 1143. As for the hearing, the State has not directed our attention to a cite in the transcript where Defendant made this alleged admission. *See Cochran,* 112 N.M. at 192, 812 P.2d at 1340 (stating that the arguments of counsel are not evidence); *In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) (stating that this Court will not comb the record to find support for a party's arguments). We believe that the State may be referring to Defendant's statements at sentencing, which would be too late to support the district court's finding of a violation. We hold that there is insufficient evidence to support the district court's finding that Defendant violated his probation, and the district court abused its discretion in so acting.

**CONCLUSION**

{23} We hold that there was insufficient evidence presented to support the district court's finding that Defendant violated his probation. We further hold that the probation officer in this case was impermissibly allowed to read from documents in her file where: (1) it is unclear where, when, or from whom she obtained such documents; and (2) there was no factual showing or finding of good cause for not calling the persons who submitted the documents to testify as required by due process. We therefore reverse.

{24} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.