**Certiorari Granted, No. 31,567, March 24, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-036**

**Filing Date: January 26, 2009**

**Docket No. 27,022**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**JAIME GUTHRIE,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Ricky D. Purcell, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}**     Defendant Jaime Guthrie challenges the district court's revocation of his probation. Defendant argues that he was denied due process under this Court's decision in *State v. Phillips*, 2006-NMCA-001, ¶¶ 11-16, 138 N.M. 730, 126 P.3d 546, when the district court revoked his probation based on the hearsay testimony of a witness who, without any personal

1

knowledge of the bases upon which the State was seeking revocation, read into evidence the statements included in Defendant's probation file. We conclude that the district court did not specifically find good cause for not requiring confrontation as mandated by *Phillips*, and we reverse and remand. In reaching our conclusion, we take this opportunity to clarify (1) the distinction raised in *Phillips* between the Sixth Amendment right to confrontation guaranteed to defendants in criminal prosecutions and the Fourteenth Amendment minimum due process right to confrontation guaranteed to defendants in probation revocation hearings and (2) the justifications for a finding of good cause by the district court.

**BACKGROUND**

**{2}**     In July 2005, Defendant pleaded guilty to three charges related to an altercation with a law enforcement officer that took place earlier that year. Following Defendant's guilty plea, the district court deferred sentencing on the condition that Defendant be placed on supervised probation for two and one half years less one day. The conditions of Defendant's probation required him to, among other things, successfully complete a ninety-day residential treatment program, regularly report to his probation officer, and make monthly probation payments. In September 2005, Defendant allegedly violated several conditions of his probation agreement, and the State subsequently filed a motion to revoke his probation. Four days after the State filed its motion, a stipulated order was filed in the district court that allowed Defendant to remain on probation and ordered his transfer from state custody to a residential treatment center in order to fulfill his agreement to complete a treatment program. In May 2006, the State filed a second motion to revoke Defendant's probation based in part on the allegation that he failed to successfully complete his required program at the residential treatment center.

**{3}**     Prior to the August 10, 2006 hearing on the State's second motion to revoke Defendant's probation, the State issued a subpoena to secure the presence of Defendant's probation officer, Cindy Chavez, at the hearing. However, the State's subsequent "notice of intent to call witnesses" indicated that it only planned to call Jaime Olivas, Ms. Chavez's supervisor, to testify. Indeed, Mr. Olivas was the only witness who testified at the hearing.

**{4}**     At the hearing, before Mr. Olivas testified, Defendant requested the dismissal of the State's motion and argued that any testimony offered by Mr. Olivas would be hearsay and would violate Defendant's constitutional right under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The district court noted the objection and proceeded with the hearing. The State then called Mr. Olivas, who testified that he was Ms. Chavez's supervisor, that Ms. Chavez was required to submit probation violation reports to him, and that he could be considered a "custodian" of such reports. Mr. Olivas then testified that he did not sign the report authored by Ms. Chavez concerning Defendant's alleged probation violations. Defendant promptly made a hearsay objection, which was overruled. Mr. Olivas then continued to testify about the statements included in Defendant's file. He stated that Defendant's file indicated that Defendant had been discharged from a program at a residential treatment center for violating its rules, that Defendant had failed to report to

2

the probation office, and that Defendant had failed to make mandatory probation payments. On cross-examination, Defendant focused exclusively on the fact that Mr. Olivas had not previously worked on Defendant's case, and Mr. Olivas ultimately admitted that he had "no personal knowledge" of Defendant's case "except for what [was] contained in the file."

**{5}** Closing arguments followed Mr. Olivas' testimony. The State focused its argument on its establishment of a foundation that Mr. Olivas acted as a "business custodian" of the report that alleged Defendant's violations of his probation conditions. In response, Defendant argued that he had a constitutional right "to cross-examine and confront all the witnesses against him" and that Ms. Chavez's absence was therefore fatal to the State's argument in favor of revoking Defendant's probation. Defendant further argued that "there is clear and established case law . . . that the court's decision cannot be based entirely on hearsay." Finally, Defendant expressed his outrage at the fact that Mr. Olivas had not "approve[d]" the report submitted by Ms. Chavez.

**{6}** Ultimately, the district court ruled in favor of the State and revoked Defendant's probation. In doing so, the district court stated that the testimony of Mr. Olivas was "probative of the fact" that Defendant had violated the terms of his probation by not successfully completing the residential treatment program. The judge further explained that the "filings" in Defendant's case indicated that Defendant had not successfully completed the residential treatment program and that Defendant had failed to provide any evidence that such was not the case. Defendant appeals from that ruling.

## CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES AT PROBATION REVOCATION HEARINGS

**{7}** We review the district court's revocation of a defendant's probation for an abuse of discretion. *Phillips*, 2006-NMCA-001, ¶ 10. "The district court abuses its discretion when its ruling is based on a misunderstanding of the law." *Id.* Our task therefore requires an examination of the applicable constitutional law to determine if the district court issued its ruling based on a misunderstanding of Defendant's right to confront the witnesses against him at his probation revocation hearing. As such, our review is de novo. *See State v. Ochoa*, 2008-NMSC-023, ¶ 10, 143 N.M. 749, 182 P.3d 130 ("The application and interpretation of law is subject to a de novo review.").

**{8}** Defendant's argument that the district court violated his right to due process by not permitting him to confront his probation officer, and therefore abused its discretion in revoking his probation, relies heavily on this Court's decision in *Phillips*. In *Phillips*, we considered the revocation of a defendant's probation when "[t]he [s]tate's only witness at the hearing was a probation officer who relied solely upon statements made in unauthenticated documents in her file." *Phillips*, 2006-NMCA-001, ¶ 1. Those statements included "an annotation from another probation officer and some documents . . . from Arizona," where the defendant's probation had previously been transferred. *Id.* The probation officer who testified was otherwise unfamiliar with the defendant's case. *Id.* ¶ 4.

Over objection, the district court concluded that the documents that included the hearsay statements that were offered as testimony "were relevant and kept in the ordinary course of business" and therefore allowed the probation officer to read the statements into evidence. *Id.* ¶¶ 1, 6. Relying on those hearsay statements, the district court concluded that the defendant had violated his probation. *Id.* ¶ 8. The defendant subsequently appealed to this Court, arguing that, by relying on those statements as the sole basis upon which to revoke his probation, the district court violated "his confrontation and due process rights." *Id.* ¶¶ 1, 9.

**{9}** In reaching our decision in *Phillips*, we explained that the formal rules of evidence do not apply to probation revocation hearings, *id.* ¶ 11; *see also* Rule 11-1101(D)(2) NMRA (stating that the rules of evidence are not applicable to proceedings for "granting or revoking probation"), and we clarified that the pertinent question was whether the defendant was "afforded minimum due process" in light of the hearsay testimony to which he objected. *Phillips*, 2006-NMCA-001, ¶ 11. As such, the rule that came out of *Phillips* was that, before a district court may revoke a defendant's probation, due process requires the actual presence and testimony of the person whose statements form the basis of revocation, unless the state makes an adequate showing, and the district court makes a specific finding, of "good cause" for not calling such person as a witness. *See id.* ¶¶ 12, 14, 16.

**{10}** Although *Phillips* may seem to address a defendant's right under the Confrontation Clause of the Sixth Amendment to confront and cross-examine witnesses at probation revocation hearings, it does not. Rather, *Phillips* explains the right as one that exists under the authority of the Due Process Clause of the Fourteenth Amendment. *See id.* ¶ 12 (explaining that the question is one of "due process" and citing the applicable federal case law explaining the existence of the right under the Fourteenth Amendment). In reaching this distinction, we note that the Confrontation Clause of the Sixth Amendment applies only to "criminal prosecutions." U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). The right to confront witnesses that is guaranteed in the Sixth Amendment does not apply to probation revocation hearings. *See, e.g.*, *State v. Rose*, 171 P.3d 253, 257 (Idaho 2007) ("A motion to revoke probation is not a criminal prosecution. Consequently, the Sixth Amendment's Confrontation Clause, which grants to criminal defendants the right to confront adverse witnesses, does not apply to probationers." (citations omitted)); *see also State v. Sanchez*, 109 N.M. 718, 719, 790 P.2d 515, 516 (Ct. App. 1990) (stating that a probation revocation hearing is not a criminal prosecution). However, as we concluded in *Phillips*, the right to confront witnesses whose statements form the basis of a district court's revocation of a defendant's probation is implicit in the Due Process Clause of the Fourteenth Amendment, and it is that constitutional authority that governs the propriety of admitting hearsay evidence in support of revocation at probation revocation hearings. *See Phillips*, 2006-NMCA-001, ¶¶ 12, 16.

**PRESERVATION**

4

**{11}** Against that backdrop, we must address the State's argument that Defendant did not adequately raise the issue in district court for purposes of preservation. "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted). Our question therefore becomes whether the constitutional and hearsay objections that Defendant raised at the hearing were sufficiently specific to alert the mind of the district court to the due process right to confrontation issue that Defendant now argues on appeal, thereby adequately invoking a ruling.

**{12}** As discussed above, and as Defendant concedes in his brief in chief, the constitutional right to confrontation at issue in this case flows from the Fourteenth Amendment, not the Sixth Amendment. The State therefore argues that, although Defendant adequately preserved a Sixth Amendment Confrontation Clause argument, he failed to preserve the Fourteenth Amendment due process argument, based on *Phillips*, that he now raises on appeal. In support of its argument, the State contends that all of Defendant's objections were expressly couched in terms of his inapplicable rights under the Sixth Amendment. Defendant, on the other hand, points our attention to the "confrontation objection" that his counsel "made more generally under the United States Constitution" in closing argument.

**{13}** Although our review of the audio recording of Defendant's probation revocation hearing confirms the State's contention that Defendant initially made only a Sixth Amendment constitutional objection, it also reveals that Defendant did, indeed, make a more general constitutional argument regarding confrontation in his closing statement. Specifically, Defendant referred to his right "to cross-examine and confront all the witnesses against him" as well as the "clear and established case law" that establishes such a right. Indeed, Defendant's argument could have been made more artfully, and this problem could have been entirely avoided had Defendant specifically structured his argument in terms of due process. However, although *Phillips* is clear in its holding that the Fourteenth Amendment and not the Sixth Amendment is at issue, the language of *Phillips* is not at all times clear as to the type of argument a defendant needs to make. For instance, *Phillips* speaks in general terms at the beginning of the opinion that its holding is "that [the d]efendant's right to confront the witnesses against him was violated." *Phillips*, 2006-NMCA-001, ¶ 2. In addition, the section of *Phillips* that discusses due process requirements is labeled "The Confrontation Clause and Admissibility of Evidence." *Id.* ¶¶ 11-16. Due to this lack of clarity, we will not punish Defendant for his failure to articulate the terms "Fourteenth Amendment," "due process," or "*Phillips*" in his objections when his claimed error of a lack of confrontation was generally argued before the district court. *See Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 540-41, 893 P.2d 428, 436-37 (1995) (accepting the sufficiency of the plaintiffs' due process arguments even though they "were not a model of clarity, and certainly could have been made with more specificity," and stating that "[t]he rules that govern the preservation of error for appellate review are not an end in themselves,

5

rather they are instruments for doing justice"). We intend this opinion to correct this lack of clarity.

**GOOD CAUSE EXCEPTION**

**{14}** Because we conclude that Defendant adequately preserved his argument for appeal, we must next apply the rule in *Phillips* to his case. Defendant argues, and we agree, that *Phillips* mandates the district court to make a specific finding of good cause for not requiring confrontation before revoking a defendant's probation based on hearsay testimony. *See Phillips*, 2006-NMCA-001, ¶ 14. As we read *Phillips*, the district court may make this finding by (1) specifically addressing the State's problems in securing the presence of the absent witness or (2) specifically stating the reasons that the hearsay evidence offered has particular indicia of accuracy and reliability such that it has probative value. *See id.* ¶¶ 16-17.

**{15}** In this case, the district court did not address Ms. Chavez's absence. It stated that the evidence was "probative of the fact" of Defendant's probation violation and that the "filings" in the case showed that Defendant had not successfully completed the residential treatment program. Although these statements concerning the evidence bear on the issue of good cause, they are merely conclusions; they do not specifically state the reasons that the evidence was sufficiently accurate or reliable so as to excuse the presence of Ms. Chavez. *Cf. State v. Scurry*, 2007-NMCA-064, ¶¶ 12, 14, 141 N.M. 591, 158 P.3d 1034 (holding, with regard to the need for a specific finding of a serious violent offense to satisfy the Earned Meritorious Deductions Act, that the district court's findings need to sufficiently justify and specifically indicate the basis for its conclusions). They are therefore insufficient to satisfy the "good cause" requirement of *Phillips*. As a result, because the district court did not properly apply the due process standard of *Phillips*, we reverse the revocation of Defendant's probation and remand to the district court to conduct further proceedings that meet this standard.

**{16}** Because we remand, we take this opportunity to clarify *Phillips* as it may apply to the record in this case. In particular, we address our declination in *Phillips* to consider the force of the business records exception in that case.

**{17}** In *Phillips*, the probation officer testified by reading from unauthenticated documents in the probation file. *Phillips*, 2006-NMCA-001, ¶ 1. The probation officer said that she was the custodian of the records and that they were "kept in the ordinary course of business." *Id.* ¶ 8 (internal quotation marks omitted). The documents included notations from another probation officer and documents likely from the probation department in Arizona, which had responsibility of Defendant. *Id.* ¶¶ 4, 6. The probation file also included documents ascribed to "Myrna" without indicating Myrna's relationship to the case or the reason for her providing documents to the probation officer. *Id.* ¶ 13.

**{18}** We did not address the admissibility of the documents in the probation officer's file

in *Phillips* under the business records exception, Rule 11-803(F) NMRA, focusing instead on the due process concerns of revoking probation based entirely upon the probation officer's reading of documents "prepared and given to her by other persons without any showing or finding of good cause for not calling those people as witnesses." *Phillips*, 2006-NMCA-001, ¶¶ 2, 11 ("[T]he question before us is not so much whether the testimony fell under the business records exception, but whether, in this informal environment, [the d]efendant was afforded minimum due process." (citation omitted)). Ultimately, when we analyzed the evidence in *Phillips*, we held that the state did not meet its burden of establishing a probation violation with reasonable certainty. *Id.* ¶ 17. We stated, quoting *State v. Vigil*, 97 N.M. 749, 753, 643 P.2d 618, 622 (Ct. App. 1982), "[w]hile some hearsay is permissible in a probation revocation hearing, when that hearsay is 'untested for accuracy or reliability, [it] lacks probative value; the result is that the revocation of probation does not rest on a verified fact." *Phillips*, 2006-NMCA-001, ¶ 17 (second alteration in original).

{19}    In *Vigil*, we held that the hearsay statement of a confidential informant, as testified to by a detective and as contained in a probation officer's report, was insufficient to support a probation revocation. 97 N.M. at 753, 643 P.2d at 622. The hearsay was untested for accuracy or reliability and therefore lacked probative value. *Id.* Yet we recognized that hearsay may have probative value based on its "rational persuasive power." *Id.* at 752, 643 P.2d at 621. Indeed, we specifically recognized that hearsay may be considered in probation revocation hearings "if of probative value, even though it may be in the form of letters, reports of probation officers and similar matter." *Id.* (internal quotation marks and citation omitted).

{20}    In the context of the proper use of probative hearsay evidence in a probation revocation hearing, the requirement of "good cause" to relax the need for confrontation also focuses upon the need for accurate or reliable evidence. The district court must balance the difficulty in obtaining the witness in question along with the probative value of the evidence without the witness. *See id.* The weaker the probative value, the greater the need for confrontation, and, hence, the greater the need to justify the absence of the witness. The stronger the probative value, the lesser the needs of confrontation and justification. Indeed, with a showing of sufficiently probative or reliable hearsay evidence, there is no need to show good cause for the absence of the witness. *See id.* at 751-53, 643 P.2d at 620-22 (stating that the district court must specifically find good cause for not allowing confrontation and noting that hearsay evidence without confrontation is sufficient if of probative value).

{21}    Business records can be sufficiently reliable to support a probation revocation. *See Robinson v. Cox*, 77 N.M. 55, 59-60, 419 P.2d 253, 256-57 (1966) (upholding parole revocation based on sole evidence of letter). To be sure, the indicia of reliability of particular business records give rise to the very reason that they are admissible as an exception to the rule that hearsay is inadmissible. *See State v. Christian*, 119 N.M. 776, 779, 895 P.2d 676, 679 (Ct. App. 1995) ("The reliability of business records is usually premised upon routine, trusted patterns of record generation and the confidence engendered by

7

showing that a particular record is created and maintained in conformity with that routine."). In *Phillips*, although we did not directly address the reliability of the probation officer's file, there were significant questions raised as to its reliability. *See Phillips*, 2006-NMCA-001, ¶¶ 18-21. However, we do not wish to foreclose the district court, in this or other cases, from analyzing the documents before it in order to ascertain whether they are sufficiently probative so as to enable it to find good cause for not requiring confrontation.

**CONCLUSION**

**{22}** We reverse the district court's revocation of Defendant's probation and remand for further proceedings in accordance with this opinion.


**{23}  IT IS SO ORDERED.**


                                             **JAMES J. WECHSLER, Judge**

**WE CONCUR:**


**CYNTHIA A. FRY, Chief Judge**


**MICHAEL D. BUSTAMANTE, Judge**


**Topic Index for *State v. Guthrie*, No. 27,022**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DU | Due Process |
| CA-RT | Right to Confrontation |
| CA-RV | Revocation of Probation |
| CA-WT | Witnesses |
| | |
| **EV** | **EVIDENCE** |
| EV-HR | Hearsay Evidence |