**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                                    **NO. 29,201**

**TYRONE PORTIS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Defendant appeals from an order revoking his probation and imposing sentence and commitment. [MIO 1; DS 2] We proposed to affirm in a notice of proposed summary disposition, and pursuant to an extension, Defendant has filed a timely memorandum in opposition. Remaining unpersuaded by Defendant's memorandum,

we affirm the revocation of his probation and imposition of his sentence.

As discussed at greater length in our notice of proposed summary disposition, Defendant pled guilty to two counts of criminal sexual penetration of a minor under age 13, [RP 46-48] was found not to be amenable to treatment as a juvenile, and was sentenced to eighteen years incarceration on each count with the sentences to run concurrently. [RP 81-83] His sentence was suspended, and he was placed on supervised probation for a period of five to twenty years. [RP 82] The sentence provided that, if recommended by Defendant's probation officer, "Defendant must successfully complete inpatient sex offender and substance abuse treatment." [RP 82] The trial court recommended that Defendant be placed in an inpatient treatment program at the New Mexico Behavioral Health Institute, the "STOP program", but recognized that the ultimate decision was up to Defendant's probation officer. [MIO 2-3; DS 6; RP 141] Defendant was admitted to the STOP program where he underwent treatment without incident for seven months. [MIO 3]

Defendant and another STOP program participant were implicated in an incident involving the prohibited consumption of alcohol. [MIO 4] Defendant admitted to drinking the alcohol, and he was terminated from the program even though he had not been warned that termination might result from his admission. [MIO 4-5]

Based upon the termination, the State sought to revoke Defendant's probation. [MIO 4-5; RP 88] Defendant claimed that he was never internally sanctioned by the STOP program for his alleged actions contrary to its discretionary policies and that he was never afforded an administrative hearing on whether he would be terminated from the program. [MIO 6; RP 143-144]

At the probation revocation hearing, Defendant informed the court that he was never warned termination could result from his admission and that he was never given a hearing before his termination from the program. [MIO 5-6] He also argued that he had a liberty interest in staying in the program and could not be terminated without minimal due process. [MIO 6-7] He claimed that the STOP program was ordered in lieu of incarceration and was therefore, in effect, a diversionary sentencing scheme entitling him to certain process similar to that given in diversionary programs such as drug court. [MIO 6-7]

The trial court disagreed with Defendant's assertions because he had not engaged in a quid-pro-quo bargaining process for his placement in the STOP program and therefore did not have a protected liberty interest in remaining in the program. [MIO 7] The court revoked Defendant's probation and sentenced him to eighteen years in prison, all but five years suspended, followed by an indeterminate five to twenty year term of probation. [MIO 7; RP 260-263]

3

On appeal, Defendant argues that he had a liberty interest in remaining in the STOP program and that his termination from the program and the resulting revocation of his probation violated his right to due process. [MIO 1, 7-13] We disagree.

First, we disagree with Defendant's contention that he was entitled to due process before termination because he was participating in what was in effect a diversionary sentencing scheme. [MIO 7-9; DS 5] As discussed in our notice of proposed summary disposition, the only diversionary program recognized in New Mexico is the preprosecution diversion program or PPD. *See* NMSA 1978, §§ 31-16A-1 to -8 (1981 as amended through 1984); *cf. State v. Jimenez*, 111 N.M. 782, 787-88, 810 P.2d 801, 806-07 (1991) (recognizing that charges against a defendant will be dismissed once that defendant successfully completes the PPD and that once a defendant is accepted into the PPD, that defendant has a "protected liberty interest in remaining free from prosecution [which is] distinct from the interest in freedom from imprisonment upon revocation of probation"). Defendant would not be eligible for the PPD because only persons who have committed non-violent offenses may qualify for that diversionary program and they only qualify if they have never been convicted of a violent felony offense. *See* § 31-16A-4(1) and (2).

Moreover, we disagree that Defendant has a right to a hearing or other procedural due process before he may be terminated from a treatment program ordered

4

by his probation officer. Defendant is correct that he has a right not to be wrongfully convicted of a probation violation which includes a right to hearing before probation may be revoked. [MIO 11] *See* Rule 5-805 NMRA; *State v. Phillips*, 2006-NMCA-001, ¶ 17, 138 N.M. 730, 126 P.3d 546 (stating that the trial court's finding of a probation violation must be based on verified facts); *In re Bruno R.*, 2003-NMCA-057, ¶ 11, 133 N.M. 566, 66 P.3d 339 ("To establish a violation of a probation agreement, the obligation is on the [s]tate to prove willful conduct on the part of probationer so as to satisfy the applicable burden of proof."); *cf. State v. Sanchez*, 2001-NMCA-060, ¶ 13, 130 N.M. 602, 28 P.3d 1143 (requiring the State to introduce proof which would incline a reasonable and impartial mind to believe that the defendant violated the terms of his or her probation). In keeping with this right, Defendant could challenge his termination from the STOP program at the probation revocation hearing, and he was entitled to cross examine witnesses and offer testimony as to his own version of events. [DS 8] *See In re Bruno R.*, 2003-NMCA-057, ¶ 11; *Sanchez*, 2001-NMCA-060, ¶ 13.

In our notice of proposed summary disposition, we set forth our assumptions regarding the evidence and testimony introduced at the probation revocation hearing. We assumed that Defendant introduced evidence and testified as to his version of why he was terminated from the STOP program, his compliance with the program for over

seven months, and his lack of an opportunity to defend himself before he was terminated from the program. [RP 142-144] Moreover, we observed that the record suggests that numerous witnesses, including witnesses from the STOP program, testified at the revocation hearing. [RP 100, 197] In his memorandum in opposition, Defendant does not contest our assumptions. *See State v. Sisneros*, 98 N.M. 201, 202-03, 647 P.2d 403, 404-05 (1982) ("The opposing party to summary disposition must come forward and specifically point out errors in fact and in law.").

Therefore, Defendant was accorded all the process due him because, at the probation revocation hearing, the trial court considered the testimony and evidence offered by the State in support of revocation and the evidence and testimony offered by Defendant in his defense and then found that Defendant violated his probation by violating the conditions for remaining in the STOP program by consuming alcohol. [RP 260] We are not aware of any constitutional, statutory, or common law authority imposing any additional obligations upon the State to afford Defendant to a separate hearing before terminating him from a treatment program even if successful completion of that program is a condition of probation. As to his contention that his termination was wrongful because it was based on one isolated event, six months prior to his termination, Defendant was entitled to, and did, raise this contention as a defense in responding to the probation revocation petition. As we disagree that

Defendant had a right to a hearing or due process before he was terminated from the STOP program, we conclude that Defendant's due process rights were not violated when he was terminated from that program without a hearing because he was given a hearing before his probation was revoked. [MIO 10-13]

In his memorandum in opposition, Defendant again directs this Court's attention to out of state authority, which he submitted for the trial court's consideration as well. [MIO 9; RP 164-172] However, as addressed in our notice of proposed disposition, we do not consider this authority to be relevant, much less persuasive, authority. First, the case cited by Defendant concerns a plea bargain. [MIO 9] *See State v. Rogers*, 170 P.3d 881, 882-83 (Idaho 2007). In this case however, Defendant pled guilty to two counts of criminal sexual penetration of a minor, stipulated that there was no plea agreement with the prosecution, and received no guarantees as to probation. [RP 46-48] *See State v. Lopez*, 2007-NMSC-011, ¶ 7, 141 N.M. 293, 154 P.3d 668 (recognizing that the suspension of a sentence is an act of clemency, not a matter of right, and a defendant on probation has no contract with the court). Furthermore, in *Rogers*, the court merely held that the defendant was entitled to a hearing before being sentenced to jail. *Rogers,* 170 P.3d at 885-86. In this case, Defendant received a two-day hearing on the merits of the State's petition to revoke Defendant's probation which afforded him all the process that the court

required in *Rogers*. [RP 216, 227; DS 2] *See id.* at 886.

Finally, we are unpersuaded by Defendant's citation to *In re Aaron L.*, 2000-NMCA-024, 128 N.M. 641, 996 P.2d 431, to support his contention that he had a protected liberty interest in remaining in the STOP program and that minimal procedural safeguards should be provided before he could be terminated from that program. [MIO 7-8] *Aaron L.* stands for the proposition that a juvenile has a protected interest in his probationary status under the Children's Code and is entitled to process in a revocation proceeding. *Id.* ¶¶ 23-25. However, as previously discussed in this opinion, Defendant was accorded due process in the form of a termination hearing before his probation was revoked. There is nothing in our opinion *In re Aaron L.*, suggesting that Defendant is also entitled to a hearing or some other type of due process before he may be terminated from a program that was recommended, but not ordered by the trial court.

**Conclusion**

In conclusion, we are not persuaded by Defendant's contention that he has a liberty interest in the STOP program and is thus entitled to due process before he is terminated from that program. To the contrary, there is nothing in the referral to the STOP program that sets it apart from any other treatment program that is required as a condition of probation. In fact, neither the trial court's initial judgment and sentence

8

nor the probation agreement even refer to the STOP program by name. [RP 81, 84] Therefore, Defendant is only entitled to the same due process rights that any probationer has before probation may be revoked. *See, e.g. Phillips*, 2006-NMCA-001, ¶¶ 11-12.

For the foregoing reasons as well as those set forth in our notice of proposed disposition, we affirm the revocation of Defendant's probation and the imposition of his sentence.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**