This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                            **NO. 30,457**

**STARLA GAUNA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant appeals from the district court's order revoking her probation and sentencing her to serve the remainder of her probationary term in the department of corrections. We issued a notice of proposed summary disposition, proposing to affirm. Defendant has filed a response to our notice, which we have duly considered. We remain unpersuaded that the district court erred, and affirm.

Defendant raises the following three issues on appeal, which we address as two. She challenges the district court's decision to permit a chemist to testify who did not perform the drug test. [DS 3; MIO 2-6] Defendant also argues that the State violated discovery rules when it failed to disclose that chemist in a timely manner and that admitting her testimony unduly prejudiced Defendant. [DS 3-4; MIO 6-8]

**Testimony of the Chemist**

In her docketing statement, Defendant asked whether the district court violated her constitutional rights when it permitted Christine Whiteman to testify at the revocation hearing as the Norchem Chemist when she did not actually perform the drug test. [DS 3] The precise nature of Defendant's argument was unclear and her articulation of the issue lacked specificity about the arguments made below. Because the docketing statement refers this Court to cases examining a defendant's right of confrontation in probation revocation hearings, we addressed this issue accordingly.

[DS 4] *See State v. Guthrie*, 2009-NMCA-036, 145 N.M. 761, 204 P.3d 1271, *cert. granted*, 2009-NMCERT-003, 146 N.M. 604, 213 P.3d 508; *State v. Phillips*, 2006-NMCA-001, 138 N.M. 730, 126 P.3d 546.

In her memorandum in opposition to our notice, Defendant argues that this Court's opinion in *Guthrie* mandates a remand for a fair probation violation hearing in which Defendant is provided her right to confront the witness against her. [MIO 2-6] We disagree that *Guthrie* requires us to remand where the State did not present evidence that the analyst who performed the test was unavailable to testify. A showing that a witness was unavailable is not the measure for satisfying due process in all probation revocation hearings; rather, a showing of good cause is required for not calling a particular witness. *See Guthrie*, 2009-NMCA-036, ¶ 9.

In *Guthrie*, we clarified that although the Sixth Amendment confrontation rights do not apply in a probation revocation proceeding, a defendant has confrontation rights in accordance with the right to due process under the Fourteenth Amendment. *Guthrie*, 2009-NMCA-036, ¶¶ 12-21. The standards for satisfying confrontation rights are more relaxed in the context of probation revocation, requiring only a showing "of good cause for not requiring confrontation before revoking a defendant's probation based on hearsay testimony." *Id.* ¶ 14. We explained in our notice that good cause *may* exist where (1) the State specifically addressed "problems in securing

3

the presence of the absent witness *or* (2) [the State] specifically stat[ed] the reasons that the hearsay evidence offered has particular indicia of accuracy and reliability such that it has probative value." *Id.* (emphasis added).

As we stated in our notice, the State presented evidence that the witness was the certifying chemist at the laboratory, she was a quality control analyst, she was present at the collection of the sample, she reviewed the sample, she saw and signed the printout out Defendant's test results, and she supervised the running of the instruments. [RP 181-82] Ms. Whiteman also testified that the instruments perform the tests. [RP 182]

We explained that even under the standards applicable to the Sixth Amendment right to confront a witness in a criminal trial adjudicating guilt, it appears this expert witness would be able to testify about the results generated by a non-testifying analyst. The New Mexico Supreme Court has held that where the instrument that generates test results is the "true accuser," the non-testifying analyst is "a mere scrivener." *State v. Bullcoming*, 2010-NMSC-007, ¶ 19, 147 N.M. 487, 226 P.3d 1 (citation omitted), *cert. granted*, __ U.S.__, __ S.Ct.__, 2010 WL 2008002 (U.S. Sept. 28, 2010) (No. 09-10876). Under these circumstances, the Court held that another analyst who was qualified as an expert witness on the machine that generated the results could provide live, in-court testimony about the results of the test under the Confrontation Clause.

4

*Id.* ¶ 20.

We stated that, undoubtedly, Ms. Whiteman's position, responsibilities, and experience with the particular test results at issue in the present case would qualify her as an expert witness able to testify about the drug testing results. *See id.* ¶¶ 6-8 (upholding the trial court's admission of the testimony of a blood alcohol analyst who did not perform the test and played no role in the preparation of the results at issue, but who helped to oversee the breath and alcohol programs in the state). Further, we observed that Defendant was able to, and did, cross-examine Ms. Whiteman about her involvement in the test results. [RP 182] We believe the State showed that Ms. Whiteman's testimony had at least the "particular indicia of accuracy and reliability such that it has probative value," to satisfy the due process requirements for probation revocation proceedings. *See Guthrie*, 2009-NMCA-036, ¶ 14. Accordingly, we proposed to affirm the district court's admission of her testimony.

In response to our notice, Defendant argues that her case is most similar to *Guthrie*, which requires a showing that a witness was unavailable, and that *Aragon* held that chemical forensic results are testimonial and inadmissible as a business records exception and under the Confrontation Clause. [MIO 4-5] We are not persuaded.

In *Guthrie*, the supervisor of the defendant's probation officer testified on

5

behalf of the state as to all the documentation in the defendant's probation file without any personal knowledge about the defendant's case. 2009-NMCA-036, ¶ 4. Further, the witness testified only as to conclusions contained in the file and the state made no showing that the evidence was sufficiently accurate or reliable so as to excuse the presence of the probation officer. *Id.* ¶ 15. The Court in *Guthrie* emphasized that "the requirement of 'good cause' to relax the need for confrontation also focuses upon the need for accurate or reliable evidence. . . . The weaker the probative value, the greater the need for confrontation, and, hence, the greater the need to justify the absence of the witness." *Id.* ¶ 20. Without any statements explaining the probation officer's absence and in the absence of any statement regarding the accuracy and reliability of the pure hearsay evidence, this Court remanded the case for the district court to consider the reason for the witness's absence and probative value of the evidence without the witness. *Id.* ¶¶ 20, 22.

In contrast to *Guthrie*, in the present case, the testifying chemist was present at the collection of the sample, she explained the process of the drug testing, and the chain of custody of Defendant's sample; she stated that the instruments perform the tests and that she supervised the running of the instruments, and she personally reviewed Defendant's results and signed the report. [RP 182] Defendant's response to our notice does not make any argument about why, given Ms. Whiteman's

responsibilities, experience, and involvement in Defendant's test results, her testimony lacked the heightened "indicia of accuracy and reliability" that we believed that her testimony possessed, even under *Aragon*, where the substitute analyst did not "observe, supervise, or participate in either the analysis or the preparation of the report." *State v. Aragon*, 2010-NMSC-008, ¶ 5, 147 N.M. 474, 225 P.3d 1280. Furthermore, unlike the testifying analyst in *Aragon*, the chemist in the current case offered her own opinion and conclusion about the test results and did not simply recite those of the testing analyst. *Id.* ¶ 23. [RP 182] For these reasons, we conclude, as we did in our notice, that the analyst's testimony based on the test results was sufficiently probative or reliable, to satisfy the due process requirements for probation revocation proceedings without a showing of good cause for the absence of the testing analyst. *See Guthrie*, 2009-NMCA-036, ¶ 20 ("Indeed, with a showing of sufficiently probative or reliable hearsay evidence, there is no need to show good cause for the absence of the witness.").

**Late Disclosure and Prejudice**

Lastly, Defendant asks whether the State violated discovery rules when it failed to disclose Ms. Whiteman in a timely manner and whether admitting her testimony unduly prejudiced Defendant. [DS 3-4] Defendant states that the State amended its witness list the day before trial to replace a different analyst from the laboratory with

Ms. Whiteman. [Id.] As we stated in our notice, however, the record indicates that the defense was given certified disclosure including the test results and Whiteman's affidavits regarding the test results, her qualifications and involvement in the test results and the chain of custody and, therefore, had notice of the content of her testimony. [RP 122-74, 181]

Our notice agreed with Defendant that she must demonstrate that the defense was prejudiced by the admission of Ms. Whiteman's testimony because of the late disclosure. *See State v. DeBorde*, 1996-NMCA-042, ¶ 14, 121 N.M. 601, 915 P.2d 906 (holding that due process requires a showing that a claimed discovery violation in probation revocation proceedings prejudiced the defense and thus the outcome of the trial). We observed that the record suggests that Defendant was aware of the evidence upon which the State would rely in the probation revocation hearing, including the content of Ms. Whiteman's testimony. Defendant was aware that the drug test results were at issue and that an analyst from the laboratory would testify. We further stated that because the analyst appeared to be a mere scrivener in reporting the results generated by the instruments, other analysts would have similarly testified, and Ms. Whiteman was highly involved in Defendant's particular test results. Also, we noted that there was no indication that Defendant requested a continuance to prepare her defense or cross-examination of Ms. Whiteman.

We proposed to conclude that Defendant made no showing or allegation below or on appeal explaining how she was prejudiced and how the outcome of the trial may have been different. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."); *State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994) ("In the absence of prejudice, there is no reversible error."). As a result, we were not persuaded that Defendant demonstrated reversible error.

In her response to our notice, Defendant asserts no new factual or legal arguments to persuade us that she was unable to prepare a defense in any manner that might have changed the result.

For the reasons stated in our notice and in this opinion, we affirm.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**