Certiorari Denied, June 25, 2013, No. 34,112

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-081

Filing Date: March 19, 2013

Docket No. 31,265

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

VERNARD SMITH,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Thomas J. Hynes, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Chief Judge.**

**{1}**    This case requires us to determine whether the district court erred in permitting an analyst from the State's Scientific Laboratory Division (SLD) to testify at trial via a video conference as to the conduct and results of a blood test. We hold that the district court did not establish the requisite necessity for allowing video testimony in lieu of live testimony and, as a result, Defendant's rights under the Sixth Amendment to the United States

1

Constitution were violated by the video conference testimony. The error was not harmless, and we reverse Defendant's conviction.

## I.     BACKGROUND

**{2}**     Vernard Smith (Defendant) was arrested for driving under the influence. His blood was tested for alcohol. An analyst from the SLD tested the blood. At Defendant's trial, the analyst testified as to the blood test results via two-way video conference over Defendant's objection. The district court found that, to appear in person, the analyst would have to drive several hours, resulting in the SLD being shorthanded, and the analyst inconvenienced in her work. Because it perceived no difference in appearing via two-way video conference and in person, the district court determined that it would permit the testimony via video conference and denied Defendant's objection. The jury convicted Defendant of driving while under the influence. Defendant and the State dispute whether there was other evidence of impairment or intoxication other than the .07 percent test result and, therefore, whether any potential error was harmless.

## II.    DISCUSSION

**{3}**     We review whether Defendant's right to confront and cross-examine the witness was violated by the district court de novo. *State v. Chung*, 2012-NMCA-049, ¶ 10, 290 P.3d 269, *cert. granted*, 2012-NMCERT-005, 294 P.3d 446.[1] Defendant also raises issues of prosecutorial misconduct and irrelevant evidence, but as we reverse based on the Confrontation Clause, we do not need to address his other arguments.

### A.     Two-Way Video Conference Testimony Violates the Confrontation Clause Absent a Showing of Necessity

**{4}**     The Confrontation Clause is found in the Sixth Amendment to the United States Constitution and made applicable to the states through the Fourteenth Amendment, as well as in Article II, Section 14 of the New Mexico Constitution. Both constitutional provisions guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend VI.

**{5}**     Case law on video testimony recognizes both the difference between virtual and real testimony and the requirement of substantial necessity when abrogating the right to face-to-

---

[1]Although the State asserts that *Chung* is not entitled to precedential value because our Supreme Court has granted certiorari, a formal Court of Appeals opinion has controlling authority in this Court, even when our Supreme Court has granted certiorari in the case. *Arco Materials, Inc. v. State, Taxation & Revenue Dep't*, 118 N.M. 12, 14, 878 P.2d 330, 332 (Ct. App. 1994), *rev'd on other grounds by Blaze Constr. Co. v. Taxation & Revenue Dep't*, 118 N.M. 647, 884 P.2d 803 (1994).

face confrontation. Generally, "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (internal quotation marks and citation omitted). Confrontation requires that the witness be presented in court in such a way as to fulfill the elements of the Confrontation Clause and, if there is to be a departure from that standard, any variance be necessary to further an important public policy. The necessity must be supported by specific findings by the trial court. *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988).

**{6}** The right to confrontation is not designed just for the criminal defendant, but for the integrity of a trial.

> The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings.

*Craig*, 497 U.S. at 846.[2]

**{7}** Although the State maintains that "[l]ive, two-way video-conferencing is identical in all critical respects to live, in-court testimony and thus satisfies the Confrontation Clause," we disagree. Virtual presence created by television falls short of physical presence in satisfying the elements of confrontation. *Harrell v. State*, 709 So. 2d. 1364, 1368-69 (Fla. 1998) (declining to find live satellite testimony to be equivalent to live, face-to-face testimony). Virtual confrontations fall short of constitutional confrontations in that "they do not provide the same truth-inducing effect." *People v. Buie*, 775 N.W.2d 817, 825 (Mich. Ct. App. 2009); *see Craig*, 497 U.S. at 857. Courts applying *Craig* to video testimony are less concerned with differentiating between one- or two-way video than they are in strictly applying a necessity test to any attempt to supplant live testimony. *United States v. Bordeaux*, 400 F.3d 548, 554 (8th Cir. 2005) (stating that "two-way systems share with one-way systems a trait that by itself justifies the application of *Craig*: the confrontations they create are virtual, and not real in the sense that a face-to-face confrontation is real" (internal quotation marks omitted)). Contrary to the State's contention, video testimony does not itself "satisfy" the requirements of the Sixth Amendment.

**{8}** The State contends that *Craig* fully resolves this case, but we disagree. *Craig* allowed the one-way video testimony of child victims of abuse and stated the method

---

[2]Historically, those proceedings permit "the accused . . . an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face[-]to[-]face with the jury in order that they may . . . judge [him] by his demeanor . . . and . . . manner . . . whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895).

3

protected several elements of the Confrontation Clause, such as the oath, cross-examination, and the trier of fact's ability to view the witness's demeanor, while only lacking the witness's ability to see the defendant. 497 U.S. at 852. In *Craig*, the United States Supreme Court established an allowable exception to the presence requirement by stating that "our precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850. In *Craig*, the important public policy was rooted in the necessity of protecting the child victims from further physical or psychological harm and, in light of that interest, the Supreme Court stated that one-way television testimony was acceptable. *Id.* at 852. We interpret *Craig* to require a particularized showing of necessity in the service of an important public policy before a court may approve an exception to physical presence. 497 U.S. at 850 (explaining that video testimony may overcome the requirement of physical confrontation only when it is "necessary to further an important public policy"). The question is whether the district court properly allowed the video testimony following an adequate showing of necessity.

**{9}**     We have declined to define necessity as including convenience. *Chung*, 2012-NMCA-049, ¶ 11 (disallowing video testimony for convenience as a Confrontation Clause violation); *State v. Almanza*, 2007-NMCA-073, ¶ 12, 141 N.M. 751, 160 P.3d 932 (stating that the use of telephonic testimony violates the Confrontation Clause when used for mere convenience). In *Almanza*, we held that the Sixth Amendment's right of confrontation requires face-to-face confrontation between the witness and the defendant with any exceptions to the rule being "narrowly tailored" and allowed in "only those situations where the exception is necessary to further an important public policy." 2007-NMCA-073, ¶ 8 (internal quotation marks and citation omitted). Courts define "important public policy" narrowly in cases such as this. *See Commonwealth v. Atkinson*, 2009 PA Super 239, ¶ 12, 987 A.2d 743 (Pa. Super. Ct. 2009) (stating that, "[i]n addition to child witness cases, there appear to be two situations in which courts have considered the use of video testimony for adult witnesses:  when a witness is too ill to travel and when a witness is located outside of the United States"). *Atkinson* held that the efficiency and security concerns upon which the government based its attempt to have a prisoner testify by video demonstrated insufficient necessity for an exception to the defendant's confrontation rights. *Id.* ¶ 17.

**{10}**     Using a similarly high standard in *Almanza*, we held that the witness's convenience or the convenience of his employer are not situations that demonstrate necessity. *Almanza*, 2007-NMCA-073, ¶ 12. We concluded that a chemist's busy schedule and inconvenience to him or his laboratory caused by traveling to testify did not rise to a consideration of necessity and, thus, did "not satisfy the exceptions to the Confrontation Clause." *Id.* ¶ 12*; see also Chung*, 2012-NMCA-049, ¶ 11. A prosecutor's purpose of using video conferencing to expedite a hearing is similarly insufficient. *Atkinson*, 2009 PA Super 239, ¶ 16; *see United States v. Yates*, 438 F.3d 1307, 1316 (11th Cir. 2006) (stating that "the prosecutor's need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the

4

[d]efendant's rights to confront their accusers face-to-face").

**{11}** SLD's analysts are part of a system that contemplates their testimony as noted by the United States Supreme Court in *Bullcoming v. New Mexico*:

> [I]n jurisdictions in which it is the acknowledged job of analysts to testify in court about their test results, the sky has not fallen. State and municipal laboratories make operational and staffing decisions to facilitate the analysts' appearance at trial. Prosecutors schedule trial dates to accommodate the analysts' availability, and trial courts liberally grant continuances when unexpected conflicts arise.

131 S. Ct. 2705, 2719 (2011) (alterations, internal quotation marks, and citations omitted). The State asserts that "more than inconvenience" was shown in this case because the analyst would be absent from her laboratory when it is short-staffed, and she would have to travel seven hours, but we are not persuaded that this claim rises to more than inconvenience.

**{12}** Additionally, the district court's finding of a burden ignores that part of the witness's job as a forensic scientist is testifying to her work in court. *See* David Mills, Ph.D, *Spread Thin: SLD Struggles With Shifts in DWI Environment*, Scientific Laboratory Division News, Vol. 7, Issue 1, at 2-3 (Fall/Winter 2010) (detailing the increased burdens of statewide travel for analysts after the Confrontation Clause-based decision in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009), noting that "SLD has [four] individuals who have been trained and are qualified to serve as expert witnesses in alcohol-related DWI cases and [six] who are qualified as experts in drug-related DWI/DUID cases"); *see also Bullcoming*, 131 S. Ct. at 2713 (noting that SLD analysts qualify as expert witnesses in DWI cases and holding that the analyst performing the analysis must personally testify under Confrontation Clause analysis). We conclude that it was error for the district court to permit two-way video testimony absent requiring an adequate showing of necessity.

**B.      Allowing the Video Conference Testimony Was Not Harmless Error**

**{13}** "Where . . . a constitutional error has been established, the [s]tate bears the burden of proving that the error is harmless." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. "[C]ourts should evaluate all of the circumstances surrounding the error." *Id.* ¶ 43 (requiring reviewing courts to evaluate error on a case-by-case basis). In the present case, the analyst provided the only testimony proving that Defendant had alcohol in his system.

**{14}** The other evidence presented at trial indicates that there is a reasonable possibility that the blood test result influenced the jury's decision. A police officer pulled Defendant over because his registration was expired and, in the process, observed Defendant swerve slightly, although the officer could not tell if Defendant had crossed the center line. Defendant did not stumble or seem impaired and spoke intelligibly when pulled over. The officer testified that Defendant had bloodshot eyes and slurred speech and admitted to

5

drinking heavily the night before.  In light of the lack of substantial support from the other evidence, there is a reasonable possibility that the results of Defendant's blood test influenced the jury's decision to convict him.  We conclude that the error was not harmless.

## III.    CONCLUSION

{15}    We hold that the reasons articulated by the district court for finding it necessary to allow the use of video testimony were insufficient as a matter of law to support its use and, therefore, Defendant's rights under the Confrontation Clause were violated.  The error was not harmless beyond a reasonable doubt.  We reverse Defendant's conviction and remand the case to the district court for further proceedings consistent with this Opinion.

{16}    **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for _State v. Smith_, No. 31,265**

**APPEAL AND ERROR**
Fundamental Error
Harmless Error

**CONSTITUTIONAL LAW**
Confrontation
Right to Confrontation

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Expert Witness
Right to Confrontation
Video or Remote Witness Testimony

**EVIDENCE**

6

Blood/Breath Tests
Expert Witness