# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: ___October 16, 2014___

**NO. 32,905**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TREVOR M.,**

Child-Appellant.


**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Child appeals the revocation of his probation.  We conclude that Child had a statutory right to confront the witnesses against him that was violated when the district court permitted a witness to testify by telephone without determining that telephonic testimony was necessary to further an important public interest.  We also conclude that the admissible evidence was insufficient to support a conclusion that Child willfully violated his conditions of probation.  We reverse and remand.

**BACKGROUND**

{2}     Child pled guilty to residential burglary and was sentenced to supervised probation for two years.  Roughly six months later, Child admitted that he violated the conditions of probation and was sentenced to one year commitment to the Children, Youth and Families Department, which was suspended in favor of a new two-year term of supervised probation.  One of the terms of the probation agreement signed by Child required him to "[a]ttend and successfully complete an [o]ut[-]of[-]h]ome [p]lacement."  Child was placed with New Visions Group Home in Clovis, New Mexico.

{3}     After New Visions staff suspected Child of taking drugs or alcohol, they decided to discharge him from the program.  While Child was being discharged, he

walked out of the group home, and a warrant was issued for his arrest. Child was arrested nine days later. The State filed a petition to revoke Child's probation based on his failure to complete the out-of-home placement. An adjudicatory hearing on the petition was held before a special master. The State presented testimony of a social worker at New Visions Group Home and the juvenile probation officer (JPO) assigned to Child's case. The social worker testified by telephone over Child's objection.

{4}     The special master found that Child had willfully violated the probation agreement by failing to successfully complete the out-of-home placement, and the district court adopted the special master's findings and revoked Child's probation. Child's exceptions to the special master's report were denied. Additional facts are provided as necessary to our discussion.

**DISCUSSION**

{5}     Child makes four arguments for reversal of the district court's ruling and/or for a new hearing. First, Child maintains that his right to confront witnesses against him was violated when the social worker testified by telephone. *See* U.S. Const. amends. VI, XIV. Second, he contends that the State failed to demonstrate that he willfully violated his probation conditions. Third, he argues that the district court erred in admitting hearsay testimony by both of the State's witnesses. Finally, Child argues

that the hearing was faulty because he did not consent to the appointment of a special master as required by the Children's Code. We conclude that Child's confrontation rights were violated and that there was insufficient evidence supporting the special master's determination that Child willfully violated his probation conditions. We address Child's evidentiary arguments in our discussion of the sufficiency of the evidence. Because it was not preserved for appeal, we do not consider Child's argument as to the appointment of a special master. We reverse and remand for a new hearing.

{6}     "The . . . issue of whether the admission of evidence violates an accused's rights under the [Sixth Amendment] is a question of law which is reviewed de novo on appeal." *In re Darcy S.*, 1997-NMCA-026, ¶ 13, 123 N.M. 206, 936 P.2d 888. Child argues that (1) the Sixth Amendment's guarantee of the right to confrontation applies to juvenile probation revocation hearings; (2) he is entitled to due process of law—including confrontation of witnesses—by the Fourteenth Amendment; and (3) regardless of whether the Sixth Amendment applies here as a matter of constitutional law, the Legislature has guaranteed the right to confrontation through NMSA 1978, Section 32A-2-24(B) (2009). *See* U.S. Const. amends. VI, XIV. Because we agree with the latter argument, we need not address the first two.

{7} It is well established that juveniles have the same rights at trial as adults, including the "right to notice of charges, to counsel, *to confrontation and to cross-examination of witnesses*, and to the privilege against self-incrimination[.]" *State v. Rudy B.*, 2010-NMSC-045, ¶ 55, 149 N.M. 22, 243 P.3d 726 (emphasis added) (citing *In re Gault*, 387 U.S. 1, 33-34, 41, 55-56 (1967)); *see* NMSA 1978, § 32A-2-14(A) (2009) ("A child subject to the provisions of the Delinquency Act is entitled to the same basic rights as an adult, except as otherwise provided in the Children's Code, including rights provided by the Delinquency Act[.]"); § 32A-2-1 (2007) (stating that "Chapter 32A, Article 2 NMSA 1978 may be cited as the 'Delinquency Act.'"); Form 10-424 NMRA ("Advice of rights by judge" form listing the rights a child gives up by entering a plea or consent decree, including "the right to confront the witnesses against the child and to cross-examine them"). Unlike adult probation revocations, which are decidedly different from trials, "[a]n allegation of a juvenile probation violation is treated as if it were a charge brought in a delinquency proceeding." *State v. Erickson K.*, 2002-NMCA-058, ¶ 15, 132 N.M. 258, 46 P.3d 1258; *see State v. Guthrie*, 2011-NMSC-014, ¶ 10, 150 N.M. 84, 257 P.3d 904 (discussing adult probation revocation hearings and stating that "[b]ecause loss of probation is loss of only conditional liberty, 'the full panoply of rights due a defendant in a [criminal trial] do [ ] not apply'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

This approach to probation revocation hearings is reflected in the Children's Code and Children's Court rules. For instance, Section 32A-2-24(B) provides that "proceedings to revoke probation shall be governed by the procedures, rights and duties applicable to proceedings on a delinquency petition." Similarly, Rule 10-261(C) NMRA provides that "[p]roceedings to revoke probation shall be conducted in the same manner as proceedings on petitions alleging delinquency. The child whose probation is sought to be revoked shall be entitled to all rights that a child alleged to be delinquent is entitled to under law and these rules[.]" The effect of this language is plain: since juveniles have the right to confront witnesses during delinquency proceedings, they must be accorded that right in probation revocation hearings.

{8} The State concedes that "[b]y virtue of the [fact that] Section 32A-2-24[(B)] [provides] that a juvenile has the same rights at a probation revocation hearing as an adjudication of delinquency, Child undoubtedly had a statutory right to face-to-face confrontation at the hearing." The State maintains, however, that this Court should not address Child's statutory argument because Child failed to preserve it. In response to the State's motion for permission for its witness to testify by telephone, Child filed a written objection citing his right to confront witnesses under the Sixth Amendment. The objection did not mention the Children's Code or Section 32A-2-

5

24(B). The district court granted the State's motion without a hearing. At the probation revocation hearing before the special master, Child objected again on confrontation grounds but did not specify the basis for the right asserted. The State argues that because Child did not cite Section 32A-2-24(B), his objection was insufficient to alert the district court or special master to the argument that his right to confrontation derives from statute. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)). We disagree.

{9} Here, inherent in Child's invocation of the Sixth Amendment were two questions: (1) whether Child had a right to Sixth Amendment-like confrontation in a probation revocation hearing, and (2) whether the right would be violated by telephonic testimony. In our view, it was thus not necessary to refer specifically to the statute to raise the first question because, although in this context the specific source of the right is statutory, the nature and scope of the right is the same as that under the Sixth Amendment.

{10}    The State cites *State v. Jason F.*, 1998-NMSC-010, ¶¶ 8-9, 125 N.M. 111, 957 P.2d 1145 for the proposition that "[w]hen a statute or rule provides greater protection than the constitution, an appellant does not fairly invoke a ruling on the greater protection by exclusively arguing a constitutional violation." *Jason F.* is inapposite. In that case, the child objected to appointment of a special master on constitutional grounds. *Id.* ¶ 8. On appeal, he argued that appointment of the special master was error because the appointment did not comply with the rule governing such matters. *Id.* ¶ 7. The Court held that "[the child] did not invoke a ruling on the application of [the rule]" and therefore the issue was not preserved. *Id.* ¶ 9. The distinguishing feature between *Jason F.* and the present case is that the child's constitutional objection at trial was entirely unrelated to his rule-based argument on appeal. In contrast, here, the right provided by Section 32A-2-24(B) is the right guaranteed by the Sixth Amendment and, consequently, the analysis of an alleged violation of the right is the same whether Child invoked the Sixth Amendment alone or Section 32A-2-24(B). *Cf. State v. Guthrie*, 2009-NMCA-036, ¶¶ 10, 13, 145 N.M. 761, 204 P.3d 1271 (recognizing that the confrontation rights guaranteed under the Sixth Amendment and Fourteenth Amendments differ, distinguishing between an objection based on the confrontation clause and one based on a "more general constitutional argument regarding confrontation," and holding that the latter was

7

sufficient to preserve a due process challenge for appeal), *rev'd on other grounds*, 2011-NMSC-014. We conclude that the district court was sufficiently apprised of Child's argument.

{11} Having concluded that Child was entitled to confront the State's witnesses, we turn now to whether that right was violated when the social worker testified by telephone. "[T]he [c]onfrontation [c]lause [of the Sixth Amendment] guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (internal quotation marks and citations omitted). The right is not absolute and deviation from live, face-to-face testimony may be permitted when an "exception is necessary to further an important public policy." *State v. Schwartz*, 2014-NMCA-066, ¶ 6, 327 P.3d 1108, *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188 (internal quotation marks and citation omitted). Any exception must be supported by "a particularized showing of necessity [by the district court]." *State v. Smith*, 2013-NMCA-081, ¶ 8, 308 P.3d 135, *cert. denied*, 2013-NMCERT-006, 304 P.3d 425. "Where there are requirements of important public policy and showing of necessity, mere inconvenience to the witness is not sufficient to dispense with face-to-face confrontation." *State v. Almanza*, 2007-NMCA-073, ¶ 12, 141 N.M. 751, 160 P.3d 932.

{12} Here, the district court did not make any findings on the necessity of telephonic testimony. Moreover, the State's motion stated only that telephonic testimony was "in the best interest of judicial economy." The State advised the court at the probation revocation hearing that, if the motion was not granted, it would need a continuation to a later date in order to have the social worker present. This position implies that the witness could be present but just not on the day of the hearing and amounts to "mere inconvenience." *Id.* There being no particularized findings of necessity and the State's justification being insufficient, we conclude that the social worker's testimony by telephone violated Child's right to confront the witness. *See id.* (holding that "the [witness's] busy schedule and the inconvenience that would be caused by either requiring his testimony or postponing the trial until he was able to testify are just the sort of considerations that do not satisfy the exceptions to the [c]onfrontation [c]lause.").

{13} "A violation [of the right to confrontation] alone, however, does not require a new trial. Rather, only when a violation of the confrontation clause is harmful to the defendant does the violation require a new trial." *Schwartz*, 2014-NMCA-066, ¶ 15. The burden is on the state to demonstrate that admission of the telephonic testimony was harmless. *Id.* Here, the State's only arguments related to the confrontation clause are that it does not apply in juvenile probation revocation hearings and that

Child failed to preserve the issue properly. The State did not address whether any violation was harmless and therefore failed to meet its burden.

{14} We next address Child's contention that there was insufficient evidence that he willfully violated the conditions of his probation. More specifically, Child maintains that the State failed to prove that it was Child's willful behavior that caused him to be discharged from New Visions Group Home. *See In re Bruno R.*, 2003-NMCA-057, ¶ 11, 133 N.M. 566, 66 P.3d 339 ("To establish a violation of a probation agreement, the obligation is on the [s]tate to prove willful conduct on the part of the probationer so as to satisfy the applicable burden of proof."). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We examine the evidence in the light most favorable to the district court's ruling. *See id.* In our analysis, we focus only on admissible evidence. *See Erickson K.*, 2002-NMCA-058, ¶ 22.

{15} Because we have already determined that the social worker's testimony was improperly admitted, we consider only the JPO's testimony. Child argues that the JPO's testimony "consisted largely of inadmissible hearsay, which should have been

excluded."  *See* Rules 11-801, -802 NMRA; *Erickson K.*, 2002-NMCA-058, ¶ 20 (holding that the rules of evidence apply in the adjudicatory phase of juvenile probation revocation hearings).  He points to the JPO's testimony that she is based in Hobbs while New Visions Group Home is in Clovis, and maintains that the JPO's testimony about Child's conduct and discharge was based on what New Visions staff told her.  For instance, the JPO testified that

> [her] understanding [] is that the incident occurred while they were trying to take him to school, he got off the van, they found him a short time later under the influence.  At that time was when they had informed me about that, and that they were going to discharge him.  And I had asked him, I'm like, well, if he's under the influence of Spice, can you please obtain that UA for me.  And shortly after that is when they called me again stating that he left the premises.

{16}     The State argues that this argument was not preserved for review.  We disagree.  Child moved for a directed verdict at the conclusion of evidence.  In his motion, he argued that the JPO's testimony was both nonspecific and "secondhand."  He stated, "[The JPO] was not supervising [Child], so what she presented to you in large part was . . . what had been relayed to her from people in Clovis."  These statements are sufficient to alert the district court of the basis of the objection and preserve a hearsay objection for appeal.  *See State v. Johnson*, 1995-NMCA-127, ¶ 6, 121 N.M. 77, 908 P.2d 770 (holding that even though the defendant did not mention the specific right at issue, the "[defendants] arguments . . . were adequate to alert the trial court to the

11

basis for [the d]efendant's proffer"), *rev'd on other grounds*, 1997-NMSC-036, 123 N.M. 640, 944 P.2d 869.

{17} In what we understand to be a request that we apply the "right for any reason" principle, the State also argues that it "likely would have sought to admit the statements under the business records exception to the hearsay rule" had Child objected during the testimony. *See Scott v. Murphy Corp.*, 1968-NMSC-185, ¶ 10, 79 N.M. 697, 448 P.2d 803 ("It is hornbook law that the decision of a trial court will be upheld if it is right for any reason."); Rule 11-803(6) NMRA. We note, however, that the State did not seek to admit any documents that would fit within the business records exception. *See Erickson K.*, 2002-NMCA-058, ¶ 22 ("[T]he [s]tate made no attempt to present documentation that might have been admissible under a recognized hearsay exception."). Nor does it provide on appeal any foundation for admission of any evidence as a business record. *See* Rule 11-803(6); *State ex rel. Elec. Supply Co. v. Kitchens Constr., Inc.*, 1988-NMSC-013, ¶¶ 10-11, 106 N.M. 753, 750 P.2d 114 (discussing the foundational requirements for business records). Further, the State does not explain how the JPO's statements would have been admissible under the business record exception. This argument is therefore unavailing. *Cf. Gracia v. Bittner*, 1995-NMCA-064, ¶ 1, 120 N.M. 191, 900 P.2d 351 ("Every litigated case is tried at least three times: there is the trial the attorneys intended to conduct; there is

12

the trial the attorneys actually conducted; and there is the trial that, after the verdict, the attorneys wished they had conducted.").

{18} After a review of the testimony, we agree with Child that the JPO's testimony as to the events in Clovis was improperly admitted because it was based on what she had been told by others. *See Erickson K.*, 2002-NMCA-058, ¶ 22 (concluding that the testimony of a juvenile probation officer was insufficient to prove that a juvenile defendant failed to complete an out-of-home placement where the officer did not have firsthand knowledge that the defendant had been discharged and why, and "[t]he [s]tate did not present the testimony of a [group home] staff member who might have had firsthand knowledge of [the d]efendant's situation"). Thus, since all of the testimony presented by the JPO and the social worker on Child's conduct before he was discharged from New Visions Group Home was improperly admitted, we conclude that the evidence was insufficient to support a finding that Child's discharge was the result of willful conduct. *See id.*

{19} Nevertheless, we remand for a new hearing. "While it is true that the State failed to present sufficient admissible evidence to support the revocation of [Child's] probation, we must consider all of the evidence presented, including the wrongfully admitted evidence, to determine whether to remand for a new hearing." *Id.* ¶ 25; *see State v. Post*, 1989-NMCA-090, ¶ 22, 109 N.M. 177, 783 P.2d 487 ("If all of the

evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred."). Here, the social worker testified that Child had "absconded" from school and was not compliant with the group home's rules prohibiting substance abuse. This evidence supports a determination that Child willfully violated his conditions of probation. We note that Child argues that there was inadequate foundation for the social worker's opinion testimony that Child was under the influence of "something" when he returned to the group home. *See* Rule 11-701 NMRA. We need not address this contention, however, because, even if that testimony was improperly admitted, we still consider it in our analysis of the appropriateness of remand for a new hearing.

{20} Finally, we do not address Child's argument that revocation of his probation should be reversed because he did not consent to appointment of a special master. *See* Rule 10-163(C) NMRA ("[T]he special master shall not preside at a[n] . . . adjudicatory hearing or dispositional hearing without concurrence of the parties."). Child did not object to the appointment of the special master when the district court ordered the hearing before a special master, nor at any time before or during the hearing. Child's failure to object and participation in the hearing without objection is akin to a waiver of any objection to the appointment. *See Jason F.*, 1998-NMSC-010, ¶ 10 (stating that the child's failure to object to appointment of a special master

14

based on non-compliance with the rule was a waiver of the objection). In addition, Child objected to the special master only after the hearing was completed and the special master's report filed. This untimely objection was insufficient to preserve Child's argument.

**CONCLUSION**

{21}    Child's right to confront the witnesses against him was violated when one of the witnesses testified by telephone without the district court's determination that telephonic testimony was necessary to further an important public interest. In addition, the admissible evidence was insufficient to prove the required elements of a probation violation. We therefore reverse the revocation of Child's probation. But because the entirety of the evidence supports a conclusion that Child violated his conditions of probation, we remand for a new hearing.

{22}    Finally, both parties agree that the judgment and disposition erroneously included a count that was dismissed pursuant to the plea agreement. On remand, the district court should correct the judgment to reflect the plea agreement.

{23}    **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**


**M. MONICA ZAMORA, Judge (specially concurring).**

**ZAMORA, Judge (specially concurring)**.

{24} I concur in Judge Bustamante's opinion as it pertains to Child's first three arguments. I understand that *Jason F.*, 1998-NMSC-010, ¶ 10 is controlling as it applies to Child's fourth argument that he did not consent to the appointment of a special master to preside over his probation revocation hearing. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305 ("Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law."). This special concurrence is for the purposes of requesting that the Supreme Court invite the Children's Court Rules Committee to modify Children's Court Rule 10-163(C) to clarify who has the burden of requesting and showing that there was concurrence of the parties allowing a special master to preside over the proceedings. Rule 10-111(C) NMRA (1995) as it applied in *Jason F.* and its recompilation as Rule 10-163(C) are identical. My concern, in both *Jason F.* and this case, lies with the Child's failure to either preserve the issue for appeal or to timely object to the appointment. The question raised is whether a Child's right to trial by a judge can be so casually waived, where the intent of appointing a special master was for purposes of expeditious handling of children's court cases and was meant to be the exception rather than the rule.

_____

**M. MONICA ZAMORA, Judge**