This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                          **NO. 33,258**

**TERIN S.,**

    Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Hector H. Balderas, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1} Terin S. (Child) appeals from the adjudication of delinquency for larceny (over $500), contrary to NMSA 1978, Section 30-16-1(D) (2006). Child raises three issues on appeal: (1) the State failed to establish the corpus delecti of larceny; (2) defense counsel was ineffective in attempting to call a "rebuttal" witness during his case in chief; and (3) Child demanded a jury trial, but the district court set the matter for a hearing before a special master. We affirm. Because this is a memorandum opinion and because the parties are familiar with the case, we reserve discussion of the facts for our analysis of the issues on appeal.

**DISCUSSION**

**Sufficiency of the Evidence to Establish the Corpus Delecti of Larceny**

{2} Child's first argument is that the State failed to present sufficient evidence to establish the corpus delecti of larceny. The standard of review for sufficiency of the evidence is highly deferential. *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. When undertaking such an analysis, we "determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted). In doing so, we "view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

**{3}** Larceny is defined as "the stealing of anything of value that belongs to another." Section 30-16-1(A); *see* UJI 14-1601 NMRA. As our Supreme Court has explained, "The corpus delicti of larceny is constituted of two elements: that the property was lost by the owner, and that it was lost by a felonious taking." *State v. Paris*, 1966-NMSC-039, ¶ 3, 76 N.M. 291, 414 P.2d 512. Child argues that because nobody saw him take the money and because he "was never shown to have the money," the corpus delicti was not proved. We disagree.

**{4}** The following testimony and evidence was presented at the adjudicatory hearing. Sarah Walker was a business teacher at the Hobbs Municipal School's Harold Murphy Alternative Learning Center. She held her classes in Room 110 and shared that room with another teacher two or three days a week. It was Ms. Walker's habit to leave her personal items in her desk in the classroom when she got to school in the morning.

**{5}** On November 1, 2012, Ms. Walker had $1,995 in cash in her purse that she planned to deposit later in the day in order to pay her taxes and for her son. She explained that she had the money with her because she knew she might not have a chance to go the bank earlier given that her schedule that day included being at school teaching, lunch, a meeting, and some other activities. When she arrived at work at about 8:00 a.m., Ms. Walker put her purse in the bottom drawer of her desk. As was her normal practice, she locked the desk with a key and kept the key with her. Ms.

3

Walker then decided to teach in the computer lab that day and left the classroom, leaving it empty and with her purse still locked in the desk. Child, who was in another class from 9:30 a.m. to 11:00 a.m., did not have permission to go into Room 110.

{6}     Later that morning, Ms. Walker was in the classroom and noticed that the top two desk drawers remained locked but the bottom drawer looked slightly ajar. She did not think anything of it at the time and did not check her purse. Ms. Walker took her purse and went to lunch and then to a scheduled county-wide meeting. Because a friend had invited her to lunch, Ms. Walker had no reason to look in her purse for the money.

{7}     After lunch and the meeting, sometime between 3:30 p.m. and 4:00 p.m., Ms. Walker went to the bank to deposit the money. When she could not find the money in her purse, Ms. Walker searched her car and trunk and called her husband. Ms. Walker was in a panic about not being able to find the cash. She went back to the school and searched her classroom, including the desk drawers, to no avail. Motion-activated surveillance cameras are located in the hallways of the school. Ms. Walker called Lorna Jackson, the assistant principal, and asked her to go through the videotapes to help her find out what happened to the money. They reviewed the video and then made a copy and gave it to the police officers who were investigating the case.

{8} Ms. Walker also asked her colleagues at the school about the missing cash. In addition, Ms. Walker spoke with Samuel Sepeda, a classmate of Child's, and called Child's grandmother, Vivian Heckard, to ask if Child had come home with a large amount of money. Finally, Ms. Walker reported the loss of cash, which she ultimately never found, to the school resource officer, Shawn Hardison.

{9} Lorna Jackson testified that the video, which was played in part for the court, showed a hallway, from which Ms. Walker's classroom door could be seen. The video showed Ms. Walker leaving her classroom that morning and showed the custodian going into the room at one point and closing the door to vacuum. Shortly thereafter, at about 10:28 a.m., Child appeared in the video. At first he passed the classroom, but then turned around, went back, and entered the room.

{10} Samuel Smith, another teacher at the school, told Ms. Walker that Child had a large amount of money on the day in question. Mr. Smith testified that he knew Child and had him in class on November 1, 2012. The class went from 9:30 a.m. to 11:00 a.m., and Mr. Smith recalled giving Child permission to go to the restroom during that period. Child left the classroom briefly and then returned. At some point after Child returned, Mr. Smith noticed that Child unfolded and smoothed a large quantity of cash in the form of hundreds, fifties, and twenties. Mr. Smith made eye contact with Child and acknowledged that he saw the cash. Child responded with a comment about teachers "tripping" when students "make bank." Mr. Smith said that he had "cause for

concern" when he saw Child with the large amount of cash and that, as a result, he sent an email to Ms. Jackson and other administrative officers for "proper action."

{11}     Two other students who were in Mr. Smith's class that day also testified at the hearing. Elizabeth Lechuga, a ninth grade student at the high school, testified that she had a physical science class with Mr. Smith. The class was split into groups—Samuel Sepeda and Kytra Marquez were in her group, and Child was alone. Ms. Lechuga testified that on November 1, 2012, Child, who was about three feet away, took out money in class and showed it to her. The money was folded and in a wad, and she saw bills in denominations of twenties, fives, and ones. She asked Child where he got money like that, and Child responded that he "makes it on his own."

{12}     In 2012, Samuel Sepeda was also in the ninth grade and a classmate of Child. He testified that other students in the class were Ms. Lechuga, Ms. Marquez, and Child. Mr. Sepeda said he never saw anything and could not remember any statement he had previously made to the police.

{13}     At the hearing, Officer Hardison testified that he was a certified police officer since 2001, that he had investigated the incident, and that he spoke with Mr. Sepeda, Ms. Lechuga, and Ms. Marquez. He also reviewed the hall video, explained how the surveillance camera worked, and confirmed that the cash was never found.

{14}     Viewing the evidence and reasonable inferences in the light most favorable to the guilty verdict, we conclude that sufficient evidence supported the Special Master's

finding that Child committed the corpus delecti of larceny. Given the fact that Ms. Walker had a large amount of cash in her purse on November 1, 2012, she placed her purse in the desk drawer in Room 110 and locked the drawer, the money went missing sometime that morning before she left for lunch, Child was later seen going into Room 110, and he then displayed a large amount of cash in Mr. Smith's classroom, it is reasonable to infer that he committed the delinquent act of larceny. While there was some conflicting testimony about the denominations of the bills, both Mr. Smith and Ms. Lechuga testified that Child openly displayed a large wad of cash in class that morning.

{15}    Relying on *Paris*, Child argues that "[t]here is a very real question regarding the second element of corpus delicti here—the felonious taking." Child's reliance is misguided. In *Paris*, the owner of a delicatessen put money in a bag on March 16th for a later bank deposit. *Id.* ¶ 4. Defendant picked up a key from the owner on March 17th so that he could clean the delicatessen, and he returned the key three hours later. *Id.* The next day, the money was gone, and the defendant did not return to work. *Id.* The Court recognized that, because no possession of the money was ever shown by the defendant, the mere loss by the owner and access and unexplained disappearance of defendant was not enough to establish the corpus delicti by circumstantial evidence. *Id.* ¶ 5. Ultimately, however, the corroborative testimony of the owner, considered together with defendant's confession, justified the conclusion that the crime charged

7

had been committed. *Id.* ¶ 13. Unlike in *Paris*, where there was not even circumstantial evidence that defendant was in possession of the money, in this case Child was seen entering Room 110 without permission and then displaying a large amount of cash to Mr. Smith and Ms. Lechuga.

{16}     Child does not persuade us that the evidence was insufficient, and we therefore hold that substantial evidence supports the Special Master's finding of the delinquent act of larceny over $500.

**Ineffective Assistance of Counsel**

{17}     Child next contends that his attorney's attempt to call a "rebuttal" witness during his case in chief amounted to ineffective assistance of counsel. We review this question de novo. *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057. In order to establish ineffective assistance, Child must show that "(1) counsel's performance was deficient, and (2) such deficiency resulted in prejudice against [him]." *Id.* Thus, Child must show deficient performance and establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

{18}     After the court denied Child's motion for a directed verdict, defense counsel recalled Mr. Smith and then attempted to call Child's uncle, Mr. Heckard, as a "rebuttal" witness. Mr. Heckard, who apparently was going to testify about the source

8

of Child's money, was never disclosed as a defense witness and was in the courtroom throughout the adjudicatory hearing even though the rule was invoked. The State objected, and the court did not allow Mr. Heckard to testify.

**{19}** We are not persuaded that Child has made a prima facie showing of ineffective assistance of counsel. Child has not shown that counsel's performance was deficient or that he suffered prejudice. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Because there is no record concerning the nature of Mr. Heckard's proposed testimony and no record demonstrating that the result would have been different if not for the incompetence, we have no sound basis for concluding that defense counsel was ineffective. Accordingly, Child's claim would be more properly pursued in a habeas corpus proceeding.

**Demand for a Jury Trial**

**{20}** Finally, we do not address Child's argument that his conviction should be reversed because he did not consent to appointment of a special master. *See* Rule 10-163(C) NMRA ("[T]he special master shall not preside at a[n] . . . adjudicatory

hearing or dispositional hearing without concurrence of the parties."). Here, Child filed a demand for a jury trial on February 1, 2013. At a pretrial conference three days later, the district court stated that it would set an adjudicatory hearing before a special master. Defense counsel did not respond or object, and the notice for the hearing was entered. Throughout numerous subsequent pretrial proceedings, defense counsel never mentioned the demand for a jury trial or objected to the appointment of a special master to preside over the adjudicatory hearing.

{21} Defense counsel's repeated failure to request or renew the demand for a jury trial, and his failure to object to the appointment of the special master when the district court ordered the hearing before a special master or at any time before or during the hearing renders the issue waived. *See State v. Trevor M.*, 2015-NMCA-009, ¶ 20, 341 P.3d 25 (stating that the child's failure to object to appointment of a special master was a waiver of the objection). We note that Child did not object to the special master even after the hearing was completed and the special master's report filed. This untimely objection on appeal is insufficient to preserve Child's argument. To the extent Child alternatively argues that defense counsel was ineffective in waiving his right to a jury trial, for the reasons set forth above, this issue is better raised in a habeas proceeding.

**CONCLUSION**

{22} The decision of the district court is affirmed.

{23}    **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**M. MONICA ZAMORA, Judge**

11